**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KASIPPILLAI MANOHARAN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 11-235 (CKK) |
| PERCY MAHENDRA RAJAPAKSA, | ) ) ) | |
| Defendant. | ) ) ) | |

**SUGGESTION OF IMMUNITY**
**SUBMITTED BY THE UNITED STATES OF AMERICA**

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully informs this Honorable Court of the interest of the United States in the pending lawsuit against His Excellency President Mahinda Rajapaksa (sued as "Percy Mahendra Rajapaksa"), the President and sitting head of state of the Democratic Socialist Republic of Sri Lanka, and hereby suggests to the Court the immunity of President Rajapaksa from this suit.[2] In support of its interest and suggestion, the United States sets forth as follows:

1.  The United States has an interest in this action because the sole Defendant, President Rajapaksa, is the sitting head of state of a foreign state, thus raising the question of President Rajapaksa's immunity from the Court's jurisdiction while in office. The Constitution assigns to the U.S. President alone the responsibility to represent the Nation in its foreign

---

[1] 28 U.S.C. § 517 provides that "any officer of the Department of Justice[] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."

[2] In this Suggestion of Immunity, the United States expresses no view on the merits of Plaintiffs' claims.

relations. As an incident of that power, the Executive Branch has sole authority to determine the immunity from suit of sitting heads of state. The interest of the United States in this matter arises from a determination by the Executive Branch of the Government of the United States, in consideration of the relevant principles of customary international law, and in the implementation of its foreign policy and in the conduct of its international relations, to recognize President Rajapaksa's immunity from this suit while in office.[3] As discussed below, this determination is controlling and is not subject to judicial review. No court has ever subjected a sitting head of state to suit once the Executive Branch has suggested the head of state's immunity.

2. The Legal Adviser of the U.S. Department of State has informed the Department of Justice that Sri Lanka has formally requested the Government of the United States to suggest the immunity of President Rajapaksa from this lawsuit. The Legal Adviser has further informed the Department of Justice that the "Department of State recognizes and allows the immunity of President Rajapaksa as a sitting head of state from the jurisdiction of the United States District Court in this suit." Letter from Harold Hongju Koh to Tony West (copy attached as Exhibit 1).

3. The immunity of foreign states and foreign officials from suit in our courts has different sources. For many years, such immunity was determined exclusively by the Executive Branch, and courts deferred completely to the Executive's foreign sovereign immunity determinations. *See, e.g., Republic of Mexico v. Hoffmann*, 324 U.S. 30, 35 (1945) ("It is therefore not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize."). In

---

[3] The fact that the Executive Branch has the constitutional power to suggest the immunity of a sitting head of state does not mean that it will do so in every case. The Executive Branch's decision in each case is guided, inter alia, by consideration of international norms and the implications of the litigation for the Nation's foreign relations.

1976, Congress codified the standards governing suit against foreign states in the Foreign Sovereign Immunities Act, transferring to the courts the responsibility for determining whether a foreign state is subject to suit.  28 U.S.C. §§ 1602 *et seq*.; *see id*. § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.").

    4.    As the Supreme Court recently explained, however, Congress has not similarly codified standards governing the immunity of foreign officials from suit in our courts.  *Samantar v. Yousuf*, 130 S. Ct. 2278, 2292 (2010) ("Although Congress clearly intended to supersede the common-law regime for claims against foreign states, we find nothing in the statute's origin or aims to indicate that Congress similarly wanted to codify the law of foreign official immunity.").  Instead, when it codified the principles governing the immunity of foreign states, Congress left in place the practice of judicial deference to Executive Branch immunity determinations with respect to foreign officials.  *See id*. at 2291 ("We have been given no reason to believe that Congress saw as a problem, or wanted to eliminate, the State Department's role in determinations regarding individual official immunity.").  Thus, the Executive Branch retains its historic authority to determine a foreign official's immunity from suit, including the immunity of foreign heads of state.  *See id*. at 2284–85 & n.6 (noting the Executive Branch's role in determining head of state immunity).

    5.    The doctrine of head of state immunity is well established in customary international law.  *See Satow's Guide to Diplomatic Practice* 9 (Lord Gore-Booth ed., 5th ed. 1979).  In the United States, head of state immunity decisions are made by the Department of State, incident to the Executive Branch's authority in the field of foreign affairs.  The Supreme Court has held that the courts of the United States are bound by suggestions of immunity

3

submitted by the Executive Branch. *See Hoffman*, 324 U.S. at 35–36; *Ex parte Peru*, 318 U.S. 578, 588–89 (1943). In *Ex parte Peru*, in the context of foreign state immunity, the Supreme Court, without further review of the Executive Branch's immunity determination, declared that the Executive Branch's suggestion of immunity "must be accepted by the courts as a conclusive determination by the political arm of the Government." 318 U.S. at 589. After a suggestion of immunity is filed, it is the "court's duty" to surrender jurisdiction. *Id.* at 588. The courts' deference to Executive Branch suggestions of foreign state immunity is compelled by the separation of powers. *See, e.g., Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974).

6. For the same reason, courts have also routinely deferred to the Executive Branch's immunity determinations concerning sitting heads of state. *See Ye v. Jiang Zemin*, 383 F.3d 620, 626 (7th Cir. 2004) ("The obligation of the Judicial Branch is clear — a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff."); *Saltany v. Reagan*, 702 F. Supp. 319, 320 (D.D.C. 1988) (holding that the suggestion of Prime Minister Thatcher's immunity was conclusive in dismissing a suit that alleged British complicity in U.S. air strikes against Libya), *aff'd in part and rev'd in part on other grounds*, 886 F.2d 438 (D.C. Cir. 1989). When the Executive Branch suggests the immunity of a sitting head of state, judicial deference to that suggestion is predicated on compelling considerations arising out of the Executive Branch's authority to conduct foreign affairs under the Constitution. See *Ye*, 383 F.3d at 626 (citing *Spacil*, 489 F.2d at 618). Judicial deference to the Executive Branch in these matters, the court of appeals noted, is "motivated by the caution we believe appropriate of the Judicial Branch when the conduct of foreign affairs is involved." *Id. See also Spacil*, 489 F.2d at 619 ("Separation-of-powers principles impel a reluctance in the judiciary to

interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy." (citing *United States v. Lee*, 106 U.S. 196, 209 (1882))); *Ex parte Peru*, 318 U.S. at 588.[4]  As noted above, in no case has a court subjected a sitting head of state to suit after the Executive Branch has suggested the head of state's immunity.[5]

---

[4] As other courts have explained, the Executive Branch possesses substantial institutional resources and extensive experience with which to conduct the country's foreign affairs.  *See, e.g., Spacil*, 489 F.2d at 619; *United States v. Truong Dinh Hung*, 629 F.2d 908, 913–14 (4th Cir. 1980).  Furthermore, "in the chess game that is diplomacy only the executive has a view of the entire board and an understanding of the relationship between isolated moves."  *Spacil*, 489 F.2d. at 619.

[5] *See Habyarimana v. Kagame*, --- F. Supp. 2d ---, 2011 WL 5170243, *19 (W.D. Okla. Oct. 28, 2011) ("Where the United States' Executive Branch has concluded that a foreign head of state is immune from suit, and where it has urged the Court to take recognition of that fact and to dismiss the suit pending against said head of state, the Court is bound to do so."), *appeal docketed*, No. 11-6315 (10th Cir. Nov. 30, 2011); *Doe v. Roman Catholic Diocese of Galveston-Houston*, 408 F. Supp. 2d 272, 278 (S.D. Tex. 2005) ("The executive's [head of state immunity] determination is not subject to additional review by a federal court."); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 110 (D.D.C. 2005) ("When the Executive Branch concludes that a recognized leader of a foreign sovereign should be immune from the jurisdiction of American courts, that conclusion is determinative."); *Leutwyler v. Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 280 (S.D.N.Y. 2001) (holding that the Executive Branch's suggestion of immunity on behalf of the Queen of Jordan "is entitled to conclusive deference from the courts"); *Tachiona v. Mugabe*, 169 F. Supp. 2d 259, 297 (S.D.N.Y. 2001) (dismissing a suit against the President and Foreign Minister of Zimbabwe based upon a suggestion of immunity filed by the Executive Branch), *aff'd on other grounds sub nom.*, *Tachiona v. United States*, 386 F.3d 205 (2d Cir. 2004); *First American Corp. v. Al-Nahyan*, 948 F. Supp. 1104, 1119 (D.D.C. 1996) ("The United States has filed a Suggestion of Immunity on behalf of H.H. Sheikh Zayed, and courts of the United States are bound to accept such head of state determinations as conclusive."); *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 382 (S.D. Tex. 1994) (concluding that the suggestion by the Executive Branch of King Fahd's immunity as the head of state of Saudi Arabia required dismissal of a complaint against King Fahd for false imprisonment and abuse), *aff'd*, 79 F.3d 1145 (5th Cir. 1996); *Lafontant v. Aristide*, 844 F. Supp. 128, 132 (E.D.N.Y. 1994) (recognizing that the suggestion by the Executive Branch of Haitian President Aristide's immunity was binding on the court and required dismissal of the case); *Anonymous v. Anonymous*, 181 A.D.2d 629, 629–30 (N.Y. Sup. Ct. App. Div. 1992) (dismissing suit against unnamed head of state based on Executive Branch suggestion of immunity); *Kline v. Kaneko*, 535 N.Y.S. 2d 303 (N.Y. Sup. Ct. 1988) (dismissing suit based on "conclusive" suggestion of head of state immunity), *aff'd*, 546 N.Y.S. 2d 506 (N.Y. App. Div. 1989).

7.      Under the customary international law principles accepted by the Executive Branch, head of state immunity attaches to a head of state's status as the current holder of the office.  After a head of state leaves office, however, that individual generally retains residual immunity only for acts taken in an official capacity while in that position. *See* 1 *Oppenheim's International Law* 1043–44 (Robert Jennings & Arthur Watts eds., 9th ed. 1996).  In this case, because the Executive Branch has determined that President Rajapaksa, as the sitting head of a foreign state, enjoys head of state immunity from the jurisdiction of U.S. courts in light of his current status, President Rajapaksa is entitled to immunity from the jurisdiction of this Court over this suit.

## CONCLUSION

For the foregoing reasons, the United States respectfully suggests the immunity of President Rajapaksa in this action.

Dated:  January 13, 2012                             Respectfully submitted,

TONY WEST
Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director

*/s/ Judson O. Littleton*
JUDSON O. LITTLETON (TX Bar No. 24065635)
JOHN G. SETTER, JR. (VA Bar No. 82621)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20001
Tel:    (202) 305-8645
Fax:    (202) 616-8470
john.g.setter@usdoj.gov

*Counsel for the United States of America*