UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KASIPPILLAI MANOHARAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PERCY MAHENDRA RAJAPAKSA, <br><br> Defendant. | Civil Action No. 11-235 (CKK) |

MEMORANDUM OPINION
(February 29, 2012)

Plaintiffs Kasippillai Manoharan, Kalaiselvi Lavan, and Jeyakumar Aiyathurai ("Plaintiffs") filed suit against Defendant Percy Mahendra Rajapaksa, in his individual and official capacity as the President of Sri Lanka, alleging violations of the Torture Victim Protection Act of 1991 ("TVPA"). Compl., ECF No. [1]. The United States filed a Suggestion of Immunity on behalf of Defendant, asserting Defendant Rajapaksa is immune from suit while he is in office. Suggestion of Immunity ("Sugg. of Imm."), ECF No. [12], at 1. The Court provided Plaintiffs an opportunity to respond to the Suggestion of Immunity, and the United States filed a reply.[1] The Court finds that the United States' Suggestion of Immunity is binding on the Court and dispositive of the Court's jurisdiction. Therefore, Plaintiffs' [8] Motion to Enter Order Validating Service of Process is DENIED and this case is DISMISSED for lack of jurisdiction.

The Court does not take this step lightly. The Plaintiffs' Complaint contains shocking

---

[1] See Pls.' Opp'n to Sugg. of Imm., ECF No. [17]; Reply of the United States in Supp. of its Sugg. of Imm., ECF No. [18].

allegations of human rights abuses and violations of United States and international law. The Court's dismissal of this case is in no way a reflection of the merits of Plaintiffs' claims or Defendant's defenses. Rather, two centuries of case law and basic constitutional and statutory principles prevent this Court from allowing Plaintiffs' Complaint to move forward at this time.

## I. BACKGROUND

Plaintiffs filed this action as the legal representatives of relatives Plaintiffs allege were the victims of extrajudicial killings while living in their native Sri Lanka. Compl. ¶¶ 3-5. Plaintiffs allege Defendant has "virtually unlimited government power in Sri Lanka," "exercise[s] command responsibility over the Sri Lankan armed forces or security services," and "knew or should have known of the extrajudicial killings under color of foreign law of [Plaintiffs' relatives]." *Id.* at ¶ 6. Plaintiffs thus seek to hold Defendant liable for the killings under the TVPA. *Id.* at ¶¶ 63-104. After filing the Complaint on January 28, 2011, Plaintiffs spent nearly eleven months attempting to serve Defendant with process. *See* 5/31/11 Status Report, ECF No. [4]; 8/12/11 Status Report, ECF No. [5]; 10/13/11 Order, ECF No. [7] (authorizing service by publication); 11/21/11 Supplemental Mot. for Serv. by Publication, ECF No. [8]. After attempting to serve Defendant via publication in Sri Lankan newspapers, Plaintiffs filed a [8] Motion to Enter Order Validating Service of Process, which is currently pending before the Court.

On December 16, 2011, Defendant moved to solicit the views of the United States regarding (i) Defendant's entitlement to head of state and foreign official immunity; (ii) justiciability of Plaintiffs' claims under the political question doctrine; and (iii) the applicability of the act of state doctrine to this case. Def.'s Mot. to Solicit Views of the United

States and for Enlargement of Time to Resp. to the Compl., ECF No. [9], at 1. In the alternative, Defendant moved for additional time to respond to the Complaint. *Id.* The Court ordered the United States to indicate whether it would file a response to Defendant's request. 12/30/11 Order, ECF No. [10]. In response to the Court's Order, the United States filed a Suggestion of Immunity, asserting that Defendant is immune from suit in this case while Defendant is in office. Sugg. of Imm. at 1; 1/13/12 Ltr. H. H. Koh to T. West, ECF No. [12-1].

## II. DISCUSSION

The United States submits that its determination that Defendant Rajapaksa is entitled to head of state immunity "is controlling and is not subject to judicial review." Sugg. of Imm. at 2. Plaintiffs contend that the plain text of the TVPA bars the application of head of state immunity to claims brought under the statute. As explained below, the Court agrees with the United States that the Court is bound by the State Department's Suggestion of Immunity, and after applying the proper canon of statutory construction, it is clear head of state immunity applies to claims brought under the TVPA. Lacking jurisdiction to proceed, the Court will dismiss the case.

*A.   Foreign Sovereign Immunity and Suggestions of Individual Immunity*

The immunity of foreign sovereigns in United States courts is a common law doctrine recognized by the Supreme Court nearly two centuries ago. In *Schooner Exchange v. McFaddon*, 7 Cranch 116 (1812), Chief Justice John Marshall "concluded that, while the jurisdiction of a nation within its own territory 'is susceptible of no limitation not imposed by itself,' the United States had impliedly waived jurisdiction over certain activities of foreign sovereigns." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983) (quoting *id.* at

136).[2]  The decision in *Schooner Exchange* "came to be regarded as extending virtually absolute immunity to foreign sovereigns."  *Id.*  Following *Schooner Exchange*, courts employed a two-part procedure to determine whether a foreign sovereign or foreign official was immune from suit.  As the Supreme Court explained:

> Under that procedure, the diplomatic representative of the sovereign could request a "suggestion of immunity" from the State Department.  If the request was granted, the district court surrendered its jurisdiction.  But "in the absence of recognition of the immunity by the Department of State," a district court "had authority to decide for itself whether all the requisites for such immunity existed.". . . Although cases involving individual foreign officials as defendants were rare, the same two-step procedure was typically followed when a foreign official asserted immunity.

*Samantar v. Yousuf*, 130 S.Ct. 2278, 2284-85 (2010) (quoting *Ex parte Peru*, 318 U.S. 578, 581, 587-88 (1943)).

Prior to 1952, the State Department generally suggested immunity in all actions brought against foreign sovereigns.  *Id.* at 2285.  In 1952, the State Department departed from this practice, and adopted a "restrictive" theory of foreign sovereign immunity, which limited immunity to "suits involving the foreign sovereign's public acts," but not "cases arising out of a foreign state's strictly commercial acts."  *Id.* (quoting *Verlinden*, 461 U.S. at 487).  However, the influence of political considerations led to inconsistent submission of suggestions of immunity under this "restrictive" theory.  *Id.*  To remedy the inconsistent application of foreign sovereign immunity by the State Department, Congress enacted the Foreign Sovereign Immunities Act

---

[2] "In accordance with Chief Justice Marshall's observation that foreign sovereign immunity is a matter of grace and comity rather than a constitutional requirement," *Republic of Austria v. Altmann*, 541 U.S. 677, 689, Plaintiffs' reliance on the test for evaluating the President's exercise of constitutional authority as outlined in *Youngstown Sheet & Tube Co. V. Sawyer*, 343 U.S. 579, 634 (Jackson, J., concurring), is misplaced.

("FSIA") in 1976. *Id.* Until 2010, a majority of Circuits held that the FSIA governed not only foreign *sovereign* immunity, but also claims of immunity by individual officers of foreign states. *Yousuf v. Samantar*, 552 F.3d 371, 378 (4th Cir. 2009) (collecting cases). In *Samantar*, the Supreme Court interpreted the FSIA to govern only the application of foreign sovereign immunity to foreign states, not foreign officials. 130 S.Ct. at 2292-93. Rather, the pre-FSIA common law regarding head of state and diplomatic immunities continues to govern whether, as in this case, an individual official from a foreign sovereign is entitled to immunity from suit. *Id.*

In accordance with the post-*Schooner Exchange* procedure, the State Department filed a Suggestion of Immunity in this case, reflecting the State Department's determination that Defendant Rajapaksa is entitled to head of state immunity while in office. The State Department's Suggestion of Immunity is conclusive and not subject to judicial review. *E.g.*, *Ex parte Peru*, 318 U.S. at 589-90 ("The certification and the request that the vessel be declared immune must be accepted by the courts as a conclusive determination by the political arm of the Government."); *Ye v. Zemin*, 383 F.3d 620, 625-27 (7th Cir. 2004) (holding courts must defer to the State Department's Suggestion of Immunity even in cases involving alleged violations of *jus cogens* norms). "The precedents are overwhelming. For more than 160 years American courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch." *Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974). "When, as here, the Executive has filed a Suggestion of Immunity as to a recognized head of a foreign state, the jurisdiction of the Judicial Branch immediately ceases." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 111 (D.D.C. 2005); *accord, id.* ("When the Executive Branch concludes that a recognized leader of a foreign sovereign should be immune from the jurisdiction of American courts, that

conclusion is determinative."); *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1119 (D.D.C. 1996) ("The United States has filed a Suggestion of Immunity on behalf of H.H. Sheikh Zayed, and courts of the United States are bound to accept such head of state determinations as conclusive."); *Saltany v. Reagan*, 702 F. Supp. 319, 320 (D.D.C. 1988) ("[T]he United States has suggested to the Court the immunity from its jurisdiction of Prime Minister Thatcher as the sitting head of government of a friendly foreign state. . . . The Court must accept [the suggestion] as conclusive.") *rev'd in part on other grounds*, 886 F.2d 438 (D.C. Cir. 1989). Although the Suggestion of Immunity is dispositive of the Court's jurisdiction, the Court briefly addresses Plaintiffs' argument that head of state immunity does not apply to claims brought under the TVPA.

    B.    *Torture Victim Protection Act*

Plaintiffs filed suit under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256. Section 2(a) of the TVPA provides that

> An individual who, under actual or apparent authority, or color of law, of any foreign nation—
>
>     (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
>
>     (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

Plaintiffs contend that the plain text of the TVPA holds *any* individual, including sitting heads of state, liable for torture or extrajudicial killings, and that any suggestion of immunity in cases such as this runs counter to the law. Pls.' Opp'n at 6-7. Plaintiffs posit that the TVPA should not be read to maintain the common law doctrine of head of state immunity "unless the result

would be absurd or [] unreasonable in light of the statutory policy fashioned by Congress." *Id.* at 6.

Despite asserting that "[e]very relevant canon of statutory interpretation militates against the Executive's Suggestion of Immunity," Pls.' Opp'n at 5, Plaintiffs' argument neglects the canon of construction most relevant to interpretation of the TVPA. As the Supreme Court noted in *Samantar*, a statute "should be interpreted consistently with the common law," when the statute "clearly covers a field formerly governed by the common law." 130 S.Ct. at 2289; *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law [] principles."). In other words, "when a statute covers an issue previously governed by the common law, we interpret the statute with the presumption that Congress intended to retain the substance of the common law." *Samantar*, 130 S.Ct. 2289 n.13. "Thus, where a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.'" *Astoria*, 501 U.S. at 108. It is undisputed that head of state immunity is a well established common law principle, *see* Pls.' Opp'n at 17, and according to Plaintiffs, the TVPA covers the issue of head of state immunity for extrajudicial killings, which is traditionally governed by the common law, *id.* at 7. Therefore, the relevant question for the Court is whether there is any evidence to suggest Congress did *not* intend to maintain the common law doctrine of head of state immunity when it enacted the TVPA.

Framed this way, it is clear Congress intended to maintain head of state immunity to suit under the TVPA. The House Report accompanying the TVPA explicitly stated "nothing in the

TVPA overrides the doctrines of diplomatic and head of state immunity." H.R. Rep. No. 102-367, at 5 (1991), *reprinted in* 1992 U.S.C.C.A.N. 84, 88; *see also* S. Rep. No. 102-249, at 8 (1991) ("Nor should visiting heads of state be subject to suit under the TVPA."). The clear statutory purpose behind the TVPA was to *maintain* the common law doctrine of head of state immunity, not override it. To the extent Plaintiffs are correct that immunizing heads of state from liability under the TVPA runs contrary to the general purposes of the statute, that contradiction was recognized by Congress before the statute was enacted, and the Court is not in a position to remedy that contradiction.

The court in *Lafontant v. Aristide* reached a similar conclusion. 844 F. Supp. 128, 138-39 (E.D.N.Y. 1994) (noting "[t]he legislative history of the TVPA lends ample support for the proposition that the Act was not intended to trump diplomatic and head-of-state immunities."). Plaintiffs contend that *Lafontant* was wrongly decided because (1) the *Lafontant* court did not analyze the text of the TVPA; (2) the legislative history of the TVPA refers only to visiting heads of state; and (3) head of state immunity under international law has "changed dramatically" since *Lafontant* was decided. None of these arguments are persuasive. First, although the *Lafontant* court does not explicitly reference the canon of construction employed here, it is clear from the court's decision that the *Lafontant* court made the correct inquiry: whether Congress intended to trump head of state immunity in enacting the TVPA. 844 F. Supp. at 138. Second, the Plaintiffs are correct that the legislative history cited by the *Lanfontant* court—and notably omitted from Plaintiffs' quotation of the legislative history—refers only to immunity for heads of state visiting the United States. *Id.* at 138. However, Plaintiffs fail to explain how immunity differs for heads of state served with process in the United States versus

8

those served in their home countries. Moreover, the references in the legislative history might simply reflect the logical assumption that, given the difficulty in effecting foreign service of process, most foreign leaders would be served with complaints under the TVPA while visiting the United States. Third, Plaintiffs failed to show that head of state immunity has evolved at all since *Lafontant* was decided in 1994. Plaintiffs argue that the Rome Convention, which created the International Criminal Court ("ICC"), "unambiguously exposed sitting heads of state to criminal prosecution for actions condemned by the TVPA." Pls.' Opp'n at 21-22. This argument is misplaced. By Plaintiffs' own admission, the Rome Convention applies to *criminal* liability, not civil liability. There is no evidence that the Rome Convention or any other agreement to which the United States is a party modified head of state immunity for civil suits. Additionally, all of the examples of cases cited by Plaintiffs wherein the head of state was indicted for extrajudicial killings, involve the ICC or special criminal tribunals. Plaintiffs do not provide any examples of a nation's domestic courts holding the head of a foreign sovereign civilly liable. Head of state immunity is premised on comity between individual nations. *Republic of Austria v. Altmann*, 541 U.S. 677 (2004) ("[A]s a matter of comity, members of the international community ha[ve] implicitly agreed to waive the exercise of jurisdiction over other sovereigns in certain classes of cases, such as those involving foreign ministers or the person of the sovereign.") (citing *Schooner Exchange*, 7 Cranch 134). The application of immunity by international tribunals in criminal cases is irrelevant to the question of how individual nations treat each others' leaders in civil cases.

   Finally, Plaintiffs assert that adhering to the United States' Suggestion of Immunity "would [] permit usurpation of the judicial power by the Executive." Pls.' Opp'n at 5. To the

contrary, "[s]eparation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy." *Spacil*, 489 F.2d at 169. As the Seventh Circuit explained, "[t]he determination to grant (or not grant) immunity can have significant implications for this country's relationship with other nations. A court is ill-prepared to assess these implications and resolve the competing concerns the Executive Branch is faced with in determining whether to immunize a head of state." *Ye*, 383 F.3d at 626-27. This Court is not in a position to second-guess the Executive's determination that in this case, the nation's foreign policy interests will be best served by granting Defendant Rajapaksa head of state immunity while he is in office.

### III.  CONCLUSION

For the foregoing reasons, the Court finds it is bound by the United States' Suggestion of Immunity which suggests Defendant Rajapaksa is entitled to head of state immunity while he remains in office. Head of state immunity is a well established principle of federal common law, which Congress did not override in enacting the Torture Victim Protection Act. This Court is required to defer to the Executive Branch's finding that Defendant Rajapaksa is immune from suit in this case while he remains in office. Therefore Plaintiffs' [8] Motion to Enter Order Validating Service of Process is DENIED this case is DISMISSED.

An appropriate Order accompanies this Memorandum Opinion.

Date:   February 29, 2012

　　　　　　　　　　　　　　　　　　　　　　　　　　　_/s/_
　　　　　　　　　　　　　　　　　　　　　　　　　　　**COLLEEN KOLLAR-KOTELLY**
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge